RICHARD J. ABOOD AND JENNIFER L. ABOOD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Abood v. Commissioner
Docket No. 7735-89
United States Tax Court
T.C. Memo 1990-453; 1990 Tax Ct. Memo LEXIS 497; 60 T.C.M. (CCH) 584; T.C.M. (RIA) 90453; August 22, 1990, Filed *497 Decision will be entered for the respondent. Thomas A. Doyle, for the petitioners. James F. Mauro, for the respondent. PARKER, Judge. PARKER MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency *498 of $ 22,088 in petitioners' 1985 Federal income tax. After concessions, [1] the sole issue remaining for decision is whether the entire $ 55,680 paid by petitioner Richard J. Abood to his former spouse in 1985, or only a portion of that amount, is deductible as alimony under section 215. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the taxable year 1985, and all rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. Petitioners Richard J. Abood and Jennifer L. Abood *499 were cash method, calendar year taxpayers filing a joint Federal income tax return for 1985, the year before this Court. Petitioners lived in Okemos, Michigan, at the time they filed their petition. Richard Abood (hereinafter "petitioner-husband") was married to Sheila Abood (hereinafter "the former spouse") until April 13, 1973, when the Circuit Court for Ingham County, Michigan (hereinafter "the county court"), issued a Judgment of Divorce dissolving the marriage. That divorce decree, in part, required petitioner-husband to pay his former spouse $ 800 per month in alimony, plus her hospitalization insurance premiums, until June 1, 1983. The Judgment of Divorce provided, in pertinent part, that: ALIMONY PROVISION
It is further ORDERED and ADJUDGED that Defendant shall pay directly to Plaintiff the sum of Eight hundred and no/100 ($ 800.00) Dollars per month as permanent alimony, provided however, that if Plaintiff remarries, the alimony will decrease to the sum of Four hundred and no/100 ($ 400.00) Dollars per month, provided further, however, that all alimony will cease on June 1, 1983, or at the death of either of the parties, or until the further order of the Court. *500 MEDICAL EXPENSES
It is further ORDERED and ADJUDGED that the Defendant will provide all hospitalization insurance for Plaintiff and for the children of the parties. In addition, Defendant will pay on behalf of the children for all reasonable medical and dental expenses, including orthodontic care, not covered by insurance. On August 31, 1979, the county court increased the alimony award to $ 1,750 per month. [2] Several years later, after further negotiation between petitioner-husband and his former spouse, the county court, on April 22, 1983, ordered that the alimony award "shall be increased to a total of Thirty Thousand ($ 30,000.00) Dollars per year." That 1983 county court order also provided that "alimony will cease on June 1, 1985, or at the death of either of the parties, or until further order of the Court," and that the "original Judgment of Divorce shall remain the same as to all other conditions and provisions contained therein." The county court issued no further orders. Thus, under the terms of the county court order, all alimony was to cease on June 1, 1985. *501 In 1985 petitioner-husband paid a total of $ 55,680 to Sheila Abood. That amount was made up of various payments to, or on behalf of, his former spouse, including hospitalization insurance premiums, car insurance premiums, state taxes, and estimated federal taxes. Of this total of $ 55,680, $ 17,033.86 was paid between January 1, 1985, and June 1, 1985, and the balance during the rest of that year. Petitioners deducted the entire $ 55,680 on their 1985 tax return as alimony under section 215(a). Sheila Abood reported the same amount as income on her 1985 Federal income tax return. [3] In his notice of deficiency, respondent limited petitioners' deduction for alimony to $ 15,524. That $ 15,524 represents 50 percent of the $ 30,000 total provided in the county court's order, plus hospitalization insurance payments. Petitioners have asked this Court to redetermine the deficiency in their tax resulting from respondent's disallowance of the balance of the alimony claimed. *502 OPINION Section 215(a) [4] *503 allows as an alimony deduction those payments includible in the former spouse's gross income under section 71. Section 71(a) [5] provides, in pertinent part, that payments are includible in the wife's gross income if (1) the wife and husband are divorced under a decree of divorce; (2) the wife gets periodic payments (whether or not made at regular intervals); (3) the payments are received after the divorce decree; (4) the payments are in discharge of a legal obligation; and (5) the legal obligation is imposed because of the marital relationship and under the decree or a written instrument incident to the divorce. The requirements at issue are the fourth and fifth -- whether the payments were in discharge of "a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree * * *." Sec. 71(a)(1). *504 Petitioners' first contention is that they are entitled to deduct the entire $ 55,680 as alimony paid during 1985. In support of this position, petitioners assert that petitioner-husband and his former spouse were on friendly terms and that he felt morally obligated to provide for her support as she needed it, regardless of whether it exceeded the amount set by the county court. Although this action may be commendable, it does not lend support to any legal argument. The Internal Revenue Code speaks of legal, not moral, obligations. This Court has noted that the foundation of section 71 is the legal obligation, under state law, which is made specific in the divorce decree or a written instrument incident to the divorce. , affirmed . Here, there was neither a divorce decree nor any written instrument incident to the divorce that ever imposed any legal obligation upon petitioner-husband to pay his former spouse any amount in excess of $ 30,000, plus her hospitalization insurance. Any payments in excess of that amount were purely voluntary. It is well settled that voluntary *505 payments are not within the purview of sections 71 and 215. ; ; , affd. . Petitioners' next contention is that, if they are not entitled to deduct the entire $ 55,680, they should be permitted to deduct at least the $ 30,000 total amount (plus hospitalization insurance premiums) set by the 1983 county court order. That 1983 order increased the alimony to "a total" of $ 30,000 "per year" without specifying a particular monthly payment. Petitioners' argument ignores this language as well as other terms and conditions of the divorce decree and of the 1983 order itself. The 1983 order expressly provided that: such original Judgment of Divorce shall remain the same as to all other conditions and provisions contained therein. That order did not modify any provisions concerning the timing of payments. It also did not modify the provision for decreasing alimony in the event of Sheila Abood's remarriage. [6] The original divorce decree provided *506 that if she remarried "the alimony will decrease to the sum of Four hundred and no/100 ($ 400.00) Dollars per month." Had Sheila Abood remarried in 1983 or 1984, it is doubtful that petitioner-husband would have argued that he was nonetheless obligated to pay her alimony of $ 30,000 for either year. Similarly, for 1985, had Sheila Abood remarried on January 1, 1985, we do not think petitioner-husband would argue that he nonetheless owed her alimony of $ 4,800 ($ 400 X 12 months), let alone that he owed her alimony of $ 30,000 for that year. Clearly, under the terms of the original divorce decree that remained in effect, petitioner-husband, in the event of his former spouse's remarriage, would have had no legal obligation to pay her any amount in excess of $ 400 per month, with even that obligation terminating June 1, 1985. *507 However, even more telling is the fact that the 1983 county court order, while extending the period for payment of alimony for two additional years -- from June 1, 1983, to June 1, 1985 -- expressly provided that the "alimony will cease on June 1, 1985." On that date all alimony, whether at the rate of $ 400 per month or at the rate of $ 30,000 per year, would terminate. On and after June 1, 1985, petitioner-husband was no longer legally obligated to make any alimony payments under the divorce decree. In , the legal obligation to pay alimony terminated by operation of law (State of Illinois) upon the former spouse's remarriage. [7] Here, the legal obligation to pay alimony terminated June 1, 1985, by the express terms of the county court order itself. Therefore, any payments petitioner-husband made thereafter were purely voluntary and hence not deductible as alimony under sections 71(a) and 215(a). *508 Quite apart from the matter of the timing of payments, however, the issue really is what was petitioner-husband's legal obligation under the divorce decree for the period January 1, 1985, to June 1, 1985. Petitioners are arguing that his legal obligation was to pay the full $ 30,000. Under their theory, even if the legal obligation had terminated on January 1 or January 2, 1985, they would necessarily have to say that petitioner-husband was still legally obligated to pay $ 30,000 for one or two days. We cannot accept petitioners' interpretation of the county court order. We conclude that the legal obligation to pay "a total" alimony of $ 30,000 "per year" does not mean an obligation to pay a total of $ 30,000 for one or two days, for six months, or for any other period less than a year. We think the only reasonable interpretation of the divorce decree as amended by the 1983 county court order is that petitioner-husband was obligated to pay alimony from January 1, 1985, through May 31, 1985, that his obligation terminated June 1, 1985, and that the amount of alimony he was legally obligated to pay for that period was a pro rata portion of the $ 30,000 total yearly amount. *509 Accordingly, we sustain respondent's determination that petitioners are entitled to deduct alimony of only $ 15,000, plus the hospitalization insurance payments of $ 524. [8] Petitioners' other arguments are not well taken and do not warrant discussion. [9]
*510 To reflect the above holdings, Decision will be entered for the respondent. Footnotes
1. Petitioners have conceded all of the adjustments in the notice of deficiency except the alimony issue. The concessions are set out in the parties' stipulation of facts, except for the loss on an uncollectible fee. The loss issue was conceded on the record at the commencement of the trial.↩
2. That particular county court order is not in evidence. However, in view of the language in the later Stipulation and Order to Modify Judgment of Divorce, we can assume that the order changed the amount and made no other changes in the original Judgment of Divorce.↩
3. The parties have stipulated that Sheila Abood may be entitled to a refund to the extent petitioners' section 215(a) deduction is disallowed. By letter dated January 19, 1989, the Appeals Office of the Internal Revenue Service in Detroit, Michigan, informed her of the notice of deficiency and suggested that she file a protective claim for refund. The record does not disclose whether or not she filed such a protective refund claim. However, petitioners' present counsel represented both petitioner-husband and Sheila Abood during their audits, filed protest letters for both of them, and presumably took the necessary steps to protect her rights.↩
4. As it read for the years relevant to this case, section 215(a) provided, in pertinent part, that: SEC. 215. ALIMONY, ETC. PAYMENTS. (a) General Rule. -- In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. * * *↩
5. As it read for the years pertinent to this case, section 71(a)(1) provided that: (a) General Rule. -- (1) Decree of Divorce or Separate Maintenance. -- If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. Sections 71(a) and 215(a) were amended by section 422(a) and (b) of the Tax Reform Act of 1984, Pub. L. 98-369, 98 Stat. 795-797. The amendments, however, only apply to divorce decrees and instruments executed after December 31, 1984, or if executed prior to January 1, 1985, then modified thereafter to expressly provide that the amendments shall apply thereto. All of the decrees or instruments involved in this proceeding were executed prior to January 1, 1985, and were never modified thereafter.↩
6. Under Michigan law, remarriage does not automatically terminate the legal obligation to pay alimony. ; .↩
7. See also , where the legal obligation to pay alimony terminated by operation of law (State of New Jersey) upon the ex-wife's remarriage.↩
8. We think respondent has been more than fair in allowing petitioners to deduct 50 percent of the $ 30,000 total yearly amount for a full six-month period ($ 15,000) rather than limiting the alimony payment to 5/12 of the total ($ 12,500), which would seem to be more appropriate. Also, part of the hospitalization insurance premiums was actually paid after June 1, 1985, on June 14, 1985, and that payment would appear to be a nondeductible voluntary payment. However, we accept respondent's concessions of the more generous amounts.↩
9. Petitioners' appeals to sound social policy and equity cannot change the legal requirements of sections 71 and 215. The argument that the financial position of the Internal Revenue Service will not be enhanced because of a possible tax refund to Sheila Abood is irrelevant. The argument also is probably factually incorrect. Petitioners ignore the difference in tax brackets and the differential in interest payments on underpayments and overpayments of tax.↩